## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge Robert E. Blackburn

Civil Action No. 15-cv-02313-REB-GPG

U.S. COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

GREGORY L. GRAMALEGUI,

    Defendant.

## ORDER RE: MOTION FOR PRELIMINARY INJUNCTION

**Blackburn, J.**

The matter before me is **The Commission's Motion for a Preliminary Injunction and Incorporated Memorandum of Law** [#12],[1] filed October 26, 2015. After the matter was fully briefed, the parties filed a **Joint Motion for Entry of Consent Order of Preliminary Injunction Against Defendant Gregory L. Gramalegui** [#36], filed January 19, 2016, whereby Mr. Gramalegui consented to the entry of an order enjoining him from "directly or indirectly violation 7 U.S.C. § 6o(1), 17 C.F.R. § 4,41, and the CFTC Order.[[2]]"  (**Consent Order of Preliminary Injunction Against Defendant Gregory L. Gramalegui** [#38], filed January 22, 2016.)

---

[1] "[#12]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

[2] A reference to a previously entered administrative order settling prior fraud charges against Mr. Gramalegui.  *See In the Matter of Gramalegui* [2000-2002 Transfer Binder] Comm. Fut. L. Rep (CCH) ¶ 28,590 (July 12, 2011).

Mr. Gramalegui's consent did not extend, however, to a continuation of the statutory restraining order pursuant to which the court granted the Commission's *ex parte* motion to freeze Mr. Gramalegui's assets.  (**See Order Granting *Ex Parte* Motion for a Statutory Restraining Order** [#8], filed October 19, 2015.)  I therefore conducted an evidentiary hearing on the viability and scope of the asset freeze on January 21, 2016.  The Commission appeared by counsel and presented argument, but no evidence in addition to that already submitted in support of the *ex parte* motion.  Mr. Gramalegui appeared in person and by counsel and testified.

I have considered carefully the evidence and arguments presented in the papers and at the hearing.  I find and conclude that the Commission's request to continue the asset freeze as presently constituted is not well-taken and that the statutory restraining order should be modified on the terms specified herein.

This is an action alleging violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1-27f (the "Act").  The CEA provides, in relevant part,

> Whenever it shall appear to the Commission that any registered entity or other person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule, regulation, or order thereunder, . . . the Commission may bring an action in the proper district court of the United States . . . to enjoin such act or practice, or to enforce compliance with this chapter, or any rule, regulation or order thereunder, and said courts shall have  jurisdiction to entertain such actions.

7 U.S.C. § 13a-1(a).  Courts have consistently recognized that the CEA "drapes the district court with broad equitable power," authority which is even more expansive and flexible because of the public interest implicated by the CEA.  ***Commodity Futures***

***Trading Commission v. Levy***, 541 F.3d 1102, 1113 (11th Cir. 2008).  ***See also***

***Commodity Futures Trading Commission v. Muller***, 570 F.2d 1296, 1300 (5th Cir.

1978).

Commensurate with the breadth of its equitable powers under the CEA, the court may freeze a defendant's assets to ensure an adequate fund for satisfaction of an ultimate order of disgorgement.  ***See Levy***, 541 F.3d at 1114.  ***See also Commodity Futures Trading Commission v. Kimberlynn Creek Ranch, Inc***., 276 F.3d 187, 193 (4th Cir. 2002) ("[I]t is well settled that equitable remedies such as disgorgement are available to remedy violations of the CEA.").  Pre-judgment asset freezes are acceptable as "reasonable measure[s] to preserve the *status quo* in aid of the claims in the suit" or to "grant[ ] interim relief of the same character as that which may be granted finally."  ***Commodity Futures Trading Commission v. Next Financial Services Unlimited, Inc.***, 2005 WL 6292467 at *11 (S.D. Fla. June 7, 2005) (quoting ***United States ex rel. Rahman v. Oncology Associates***, 198 F.3d 489, 498 (4th Cir. 1999)) (internal quotation marks omitted; alterations in original).

The burden of proof to demonstrate the propriety of an asset freeze is "relatively light."  ***Federal Trade Commission v. IAB Marketing Associates***, ***LP***, 746 F.3d 1228, 1234 (11th Cir. 2014).  "Exactitude is not a requirement," and the Commission need only present "a reasonable approximation of a defendant's ill-gotten gains."  ***Securities and Exchange Commission v. ETS Payphones, Inc***., 408 F.3d 727, 735 (11th Cir. 2005) (citation and internal quotation marks omitted).  Moreover, the freeze need not be limited only to assets directly traceable to the defendant's allegedly illegal activities.

*See Securities and Exchange Commission v. Sekhri*, 2000 WL 1036295 at *1 (S.D.N.Y. July 26, 2000) (citing cases).

By the same token, because ultimately "the power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing" *Securities and Exchange Commission v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978), there must be a "reasonable approximation" between the scope of the asset freeze and the defendant's ill-gotten gains, *Federal Trade Commission v. Bishop*, 425 Fed. Appx. 796, 798(11th Cir. 2011). Indeed, it would constitute an abuse of the court's otherwise broad discretion to fail to require some amount of parity between the scope of the asset freeze and the amount of potential disgorgement. *See Bishop*, 425 Fed. Appx. at 798. Because that determination typically cannot be made in a vacuum, courts often approve orders temporarily freezing most or all of a defendant's assets early in the litigation, providing the government an opportunity to investigate the extent of the alleged fraud, and requiring the defendant to provide information relevant to that inquiry. *See, e.g.*, *IAB Marketing Associates, LP*, 746 F.3d at 1234; *SEC v. Forte*, 598 F.Supp.2d 689, 692 (E.D. Pa. 2009). The government then is required to make an accounting to assist the court in determining the appropriate scope of the asset freeze going forward. *See Commodity Futures Trading Commission v. American Metals Exchange Corp.*, 991 F.2d 71, 79 (3rd Cir. 1993); *Commodity Futures Trading Commission v. American Metals Exchange Corp.*, 693 F.Supp. 168, 196-97 (D.N.J. 1988). *See also Securities and Exchange Commission v. Dowdell*, 175 F.Supp.2d 850, 854 (W.D. Va. 2001) ("If the court has the authority to freeze personal assets

temporarily, it logically has the 'corollary authority to release frozen personal assets, or lower the amount frozen.'") (quoting **SEC v. Duclaud Gonzalez de Castilla**, 170 F.Supp.2d 427, 429 (S.D.N.Y. 2001)).

Courts will release previously frozen assets after balancing "[t]he defendant's interest in having access to funds needed to pay ordinary and necessary living expenses . . . against the government's interest in preventing the depletion of potentially forfeitable assets." **United States v. Thier**, 801 F.2d 1463, 1474 (5th Cir. 1987), **modified on other grounds on denial of reh'g**, 809 F.2d 249 (5th Cir. 1987). **See also Securities and Exchange Commission v. Manor Nursing Centers, Inc.**, 458 F.2d 1082, 1103, 1105 (2nd Cir. 1972). In making this determination, the court may consider evidence of the defendant's overall assets and income, as well as whether the defendant is requesting funds for luxuries rather than necessities. **Forte**, 598 F.Supp.2d at 693-94; **Dowdell**, 175 F.Supp.2d at 854. **See also Duclaud Gonzalez de Castilla**, 170 F.Supp.2d at 430; **Securities and Exchange Commission v. Coates**, 1994 WL 455558 at *2 (S.D.N.Y. Aug. 23, 1994). Courts will not approve the release of funds for living expenses that are found to be unnecessary or which, though necessary, are determined to be excessive. **See Forte**, 598 F.Supp.2d at 694 (citing cases). All requests to release funds to pay for living expenses must be supported by adequate documentation. **See id.**; **Securities and Exchange Commission v. Dobbins**, 2004 WL 957715 at *3 (N.D. Tex. Apr. 14, 2004).

At the hearing, the Commission elected to stand on the evidence presented in support of its *ex parte* motion for a statutory restraining order and presented no

additional evidence in its case-in-chief.  It represented in argument that only about $12,000 in assets – the corpus of Mr. Gramalegui's personal checking and trading accounts – had been found and frozen.  It referred to the affidavit of one investor who believed he had been defrauded by Mr. Gramalegui's program and sought  return of the $5,596 he paid for it.  (***See* Motion for *Ex Parte* Statutory Restraining Order App.**, Exh. 3 [#2], filed October 19, 2015.)

Mr. Gramalegui testified in his own behalf regarding, and presented a signed statement attesting to, his current sources of income and his living and other expenses.  (***See*** Def. Hrg. Exh. 1.)   He also averred, without contradiction, that between 2010 and 2015[3] he earned revenues from the challenged program of approximately $325,000.

In light of the evidence and testimony, the court finds and concludes that an ongoing total freeze on Mr. Gramalegui's assets would be disproportionate to the scope of the potential disgorgement that presently appears likely.  Mr. Gramalegui testified that he currently earns somewhere between $6,000 and $10,000 per month from the rental of his house and the licensing of a database of investor names.  While that amount is adequate to cover his monthly mortgage payment and other living expenses,[4] it is inadequate to completely finance his preexisting card debt[5] or make needed repairs to

---

[3] That is, within the applicable five-year statute of limitations.  ***See*** 28 U.S.C. § 2462; ***Gabelli v. SEC***, – U.S. –, 133 S.Ct. 1216, 1220-21, 185 L.Ed.2d 297 (2013).

[4] I do not mean to suggest that all Mr. Gramalegui's listed expenses are reasonable and necessary.  Indeed, some items he claims plainly appear excessive and/or unnecessary.  However, given the breadth of the court's discretion in this regard, I am neither required nor inclined to undertake a line-item analysis of Mr. Gramalegui's expenses.  Inherent within the parameters afforded by my order, Mr. Gramalegui will have some latitude to prioritize his spending.  Further adjustments may be made as proven necessary.

[5] At the hearing, counsel for the Commission expressed concern that Mr. Gramalegui's substantial credit card debt evidenced his inability to manage money and potential to deplete yet further any funds that might be available to potential claimants in this suit.  The court is not unsympathetic to this argument.  Nevertheless, it seems apparent to the court that allowing Mr. Gramalegui to default on his

his home, which is his primary asset as well as the primary source of his current income. ***See Federal Savings & Loan Insurance Corp. v. Dixon***, 835 F.2d 554, 565 n.2 (5th Cir. 1987) (district court on remand should consider defendant's claim that freeze order could lead to loss of his house: "To allow the house to be repossessed and disposed of at a forced sale may not be the best way to preserve assets[.]"). Moreover, it is inadequate to allow Mr. Gramalegui to pay his attorneys. Neither the parties nor the court would be well served if the effect of maintaining a total asset freeze would require Mr. Gramalegui to proceed *pro se*.

For these reasons, I will order the following items exempted from the scope of the asset freeze imposed by the extant statutory restraining order: (1) the $100,000 line of credit Mr. Gramalegui has through First Bank; (2) up to $100,000 of equity in the house on Larkspur Lane in Vail; and (3) Mr. Gramalegui's Chase United Visa card. I find the release of these assets sufficient, based on the evidence presently before me, to meet the standards relevant to modification of asset freezes. All other assets will remain subject to the freeze, pending further order of court.

Additionally, I will order the Commission to produce an accounting within 90 days. At the hearing, the Commission presented argument, but no evidence, that Mr. Gramalegui had not complied fully with his obligations under the statutory restraining order to provide information which would allow the Commission to accurately account for investor losses. Presently, that assertion is completely unsubstantiated, and the Commission has made no formal effort to prove up or otherwise force Mr. Gramalegui's compliance with his discovery obligations in the four months since the statutory

---

credit card payments also may diminish the ultimate recovery available to investors, who may have to stand in line with or behind these other creditors.

restraining order was entered. Given the admittedly light burden in showing entitlement to an asset freeze, it is incumbent on the Commission to act expeditiously to justify the scope of the freeze, so that Mr. Gramalegui is not left in limbo for an unreasonably extended or indefinite period.[6]

Accordingly, the asset freeze will be modified as indicated herein.

**THEREFORE, IT IS ORDERED** as follows:

1. That **The Commission's Motion for a Preliminary Injunction and Incorporated Memorandum of Law** [#12], filed October 26, 2015, is granted in part and denied in part as follows:

   a. That the motion is granted to the extent specified in the **Consent Order of Preliminary Injunction Against Defendant Gregory L. Gramalegui** [#38], filed January 22, 2016; and

   b. That the motion is denied in part insofar as it seeks a continuation of the extant asset freeze imposed by my **Order Granting *Ex Parte* Motion for a Statutory Restraining Order** [#8], filed October 19, 2015;

2. That the asset freeze imposed by my **Order Granting *Ex Parte* Motion for a Statutory Restraining Order** [#8], filed October 19, 2015, is modified in part, and the following assets are unfrozen and no longer subject thereto:

   a. The $100,000 line of credit Mr. Gramalegui has through First Bank;

   b. Up to $100,000 of the equity in the house on Larkspur Lane in Vail; and

   c. Mr. Gramalegui's Chase United Visa card;

---

[6] If it later is shown that Mr. Gramalegui indeed has been recalcitrant in complying with the discovery aspect of the statutory restraining order, the court of course may reconsider its position. **See Forte**, 598 F.Supp.2d at 693.

3. That in all other respects, the **Order Granting *Ex Parte* Motion for a Statutory Restraining Order** [#8], filed October 19, 2015, shall remain in full force and effect; and

4. That on or before **May 17, 2016,** the Commission shall file with the court an accounting of all losses alleged to be attributable to Mr. Gramalegui and Emini Trading School, which losses may be subject to disgorgement in this matter.

Dated February 17, 2016, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge