# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 15-cv-02313-REB-GPG

U.S. COMMODITY FUTURES TRADING COMMISSION,

      Plaintiff,

v.

GREGORY L. GRAMALEGUI,

      Defendant.

---

## ORDER REGARDING THE CFTC'S MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF DAVID R. ARONSON

---

This matter comes before the Court on the CFTC's motion  (ECF #111)[1] (which was referred to this Magistrate Judge (ECF #115)),[2] Defendant's response (ECF # 123), and the CFTC's reply (ECF # 131).  The Court has reviewed each of the aforementioned documents and any attachments.  The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises.  Oral argument was not requested and is not necessary to

---

[1] "(ECF #111)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

[2] Any party may object to this non-dispositive Order within fourteen (14) days.  Fed.R.Civ.P. 72(a).

resolve this discrete issue.  For the following reasons, I GRANT the motion in part and DENY the motion in part as set forth below.

Defendant wishes to utilize the opinion and testimony of David R. Aronson, CMT.  The CFTC moves to exclude the report he submitted as well as his potential testimony.  Defendant opposes this request.  Mr. Aronson was asked to address three broad questions which will be set forth below in turn (*see* ECF # 111, opinion of David Aronson, p. 6).

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.  In determining admission under Rule 702, and in appropriately performing the "gatekeeping" role it bears, the Court must also look to:  *Daubert v. Merrell Dow Phar.,*  509 U.S. 579 (1993);  *Gen. Elec. Co. v. Joiner*,  522 U.S. 136 (1997) and *Kuhmo Tire Co., Ltd. V. Carmichael*,  526 U.S. 137 (1999).  Keeping in mind that "rejection of expert testimony is the exception rather than the rule" *U.S. v. Nacchio*,  519 F.3d 1140, 1154 (10th Cir. 2008), I must apply the principles set forth in the trio of *Daubert, General Electric., and Kuhmo*.

The CFTC's complaint states that Defendant "offered for sale to clients a trading system and advisory service . . . "  (ECF #1, para. 1).  It goes on to define "[a] trading system [as] a

methodology for determining when to enter and exit a trade, among other things." *Id*.  The first

question asked of Mr. Aronson bears on this issue:

> 1.      Is there a distinction between a "trading-system" and a trading plan?  Were the products offered by Defendant through Eminitradingschool.com a trading system?  Was Defendant operating a trading system?

The CFTC properly opposes Mr. Aronson's proffered testimony on this question for a

number of reasons.  It is "the court's duty to set forth the law" applicable to the facts presented at

trial.  *Sprecht v. Jensen*,  853 F.2d 805, 808 (10th Cir. 1988) (en banc), *cert. denied*, 109 S.Ct.

792 (1989).  Mr. Aronson attempts to define and distinguish the terms trading-system, trading

plan, trading methodology, and trading method.  (ECF #111, Aronson report pp. 8-11).  "[O]ur

system reserves to the trial judge the role of adjudicating the law for the benefit of the jury."

*Sprecht, supra*. at 808-09.  Additionally, the terms trading system and advisory service are pulled

from sections of the prior agency Order and Offer of Settlement and set forth in the complaint.

(ECF # 1, para. 16).   To the extent that there may be ambiguity in these terms, "[w]hen an

agency order is ambiguous, a court will uphold the agency's interpretation unless it is arbitrary

and capricious."  *Colorado Interstate Gas Co. v. F.E.R.C.*,  791 F.2d 803, 810 (10th Cir. 1986)

(citation removed).   There has been no request nor any finding here that the agency's

interpretation is arbitrary and capricious.

Following the provision of definitions, Mr. Aronson goes on to apply the law to the facts,

opining "[i]n summary, in keeping with my analysis above, the products offered by ETS are not

a trading system, but, rather, are an educational product that teaches a subjective methodology

for evaluating financial markets." (Aronson report p. 11).  This is an improper application of the

law to the facts and invades the province of the jury.  *See U.S. v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008) (citation and internal quotation omitted).

Because it attempts to define the law of the case, because it attempts to override an agency definition not found to be arbitrary and capricious, and because it ultimately attempts to invade the province of the jury, Mr. Aronson will not be permitted to testify to what has been set forth in question one or the answer thereto.

2.      [a] Was Defendant offering and selling an advisory service?

        [b] Can the reward to risk ratios be defined for trades never entered?

The above question has been broken down by the parties into (a) and (b).  I will address the question in that same fashion.

[a] Was Defendant offering and selling an advisory service?

Mr. Aronson's answer to 2(a) breaks down into two parts.  The first of these is an opinion as to why Aronson believes Defendant was offering training education rather than an advisory service.  The larger part of the answer to question 2(a) goes on to provide research, facts and examples of what constitute teaching or training education.

Mr. Aronson attempts to define "advisory service."  As set forth above, Mr. Aronson does not get to provide for the Court the definition of advisory service as this would be improper.  Additionally, Mr. Aronson again, as with question 1, attempts to apply the law to the facts in an

improper manner to answer the question as to whether Defendant was operating an advisory service.  This will not be allowed.

With regard to showing what an educator or teacher does, my answer is different.

A commodity trading advisor is defined as:

**(A) In general**

Except as otherwise provided in this paragraph, the term "commodity trading advisor" means any person who--

**(i)** for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in--
**(I)** any contract of sale of a commodity for future delivery, security futures product, or swap;
**(II)** any agreement, contract, or transaction described in section 2(c)(2)(C)(i) of this title or section 2(c)(2)(D)(i) of this title[1]
**(III)** any commodity option authorized under section 6c of this title; or
**(IV)** any leverage transaction authorized under section 23 of this title;
**(ii)** for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning any of the activities referred to in clause (i);
**(iii)** is registered with the Commission as a commodity trading advisor; or
**(iv)** the Commission, by rule or regulation, may include if the Commission determines that the rule or regulation will effectuate the purposes of this chapter.

**(B) Exclusions**
Subject to subparagraph (C), the term "commodity trading advisor" does not include--
**(i)** any bank or trust company or any person acting as an employee thereof;
**(ii)** any news reporter, news columnist, or news editor of the print or electronic media, or any lawyer, accountant, or **teacher**;
**(iii)** any floor broker or futures commission merchant;
**(iv)** the publisher or producer of any print or electronic data of general and regular dissemination, including its employees;
**(v)** the fiduciary of any defined benefit plan that is subject to the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1001 et seq.);
**(vi)** any contract market or derivatives transaction execution facility; and
**(vii)** such other persons not within the intent of this paragraph as the Commission may specify by rule, regulation, or order.

7 U.S.C.§ 1a (emphasis **added**).  7 U.S.C. § 6o states (with emphasis **added**):

§ 6*o*. Fraud and misrepresentation by commodity trading advisors, commodity pool operators, and associated persons

 (1) It shall be unlawful for a **commodity trading advisor**, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--
(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
(B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

In order to prove up some of their claims, the CFTC must prove that Defendant was a commodity trading advisor.  One of the exclusions Defendant attempts to utilize to show that he was not, is B(ii), the teacher exclusion.  As to what a teacher in this area does and how such a teacher would operate, that information is relevant to this action under Rule 702.  Mr. Aronson, through his nearly a decade of teaching experience in this field at the City University of New York has the requisite background and experience to testify in this area.  Mr. Aronson has the specialized knowledge necessary in this field and his knowledge is reliable.  His testimony and opinion in this area has sufficient facts and dates from his nearly ten years' experience as a teacher in this area.  Mr. Aronson will be able to testify as to how a teacher or educator in this field might teach.  This will include being able to state and discuss how a teacher might use "current" or "real-time examples" as a teaching method.  *See* Aronson report p. 12.  Mr. Aronson will ultimately be able to opine as to whether he thinks Defendant was operating as a teacher v. a commodity trading advisor.  As to the strength of this evidence, as to whether Defendant was truly operating as a teacher or a commodity trading advisor, that is for the jury to decide. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible

evidence." *Daubert*, 509 U.S. 579 at 596.   However, Mr. Aronson will not be able to define for himself the term commodity trading advisor.


2[b] Can the reward to risk ratios be defined for trades never entered?

The CFTC challenges the opinions in 2(b) and 3 on relevance grounds.

Relevance:

The proffered evidence must pass Rule 401 muster in that it must "[have] any tendency to make a fact more or less probable than it would be without the evidence."  Fed.R.Evid. 401(a). Additionally, I must look to "whether the evidence is probative or factually relevant to the proposition asserted."  *Simms v. Great Am. Life Ins. Co.*,  469 F.3d 870, 881 (10th Cir. 2006). Finally, I must assess "the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact.  *Bitler v. A.O. Smith Corp.*,  400 F.3d 1227, 1234 (10th Cir. 2004) (defining relevance under Rule 702 by referring to Rule 401).

Looking first to the Complaint in this action, the CFTC intends to prove the following:

**1.      Defendant, while acting as a commodity trading advisor (CTA), by using the mails or other means or instrumentalities of interstate commerce (i) employed devices, schemes, or artifices to defraud clients or prospective clients, and (ii) engaged in transactions, practices or courses of business which operated as a fraud or deceit upon clients or prospective clients in violation of 7 U.S.C. § 6o(1).  (ECF #1, para. 73).**

2.      Defendant, while acting as a CTA, presented the performance of simulated and hypothetical commodity interest accounts without prominently disclosing the required statement in immediate proximity to the performance being presented, in violation of 17 C.F.R. § 4.41. (ECF # 1, para 80).

**3.      Defendant violated the Order of July 12, 2001 prohibiting him from making misrepresentations about performance, profits, or results that can be achieved using his trading system or advisory service. (ECF #1, paras. 84-85).**

4.      Defendant is precluded from presenting hypothetical results without stating, in certain required terms, that the results are based on hypothetical trading. (ECF # 1, para. 86).

5.      Defendant failed to make a certain warning regarding risks as required by the Order. (ECF # 1, para. 87).

6.      Defendant failed to retain required marketing materials for two years as required by the Order. (ECF # 1, para. 88).

7.      Defendant provided false testimony to the commission as to whether he "recommended, idetif[ied], or show[ed]trades to clients in the Live Trading Room." (ECF # 1, para. 92).

8.      Defendant modified materials provided to the Commission without informing them of that modification. (ECF # 1, para. 93).

Of the preceding eight items, with some sub-parts, that the CFTC wishes to prove at trial there are at least several that on their face require no expert testimony to prove up, those being: 2, 4, 5, 6, 7 and 8. Even if those numbered items needed expert testimony, the opinions offered

by Mr. Aronson do not speak to any of the issues raised in the above numbered items.  That same lack of relevance is not be true with regard to numbers 1 and 3 above (**emphasis added**).

Defendant, in order to show that his business did not operate as a fraud or deceit and to show that he did not make misrepresentations about performance, profits and results, may need expert testimony, specifically that which is provided in 2(b) and 3.  I keep in mind that this is an extremely complex area.  Looking at the text of the complaint, (ECF #1), the CFTC believes that Defendant was operating a "trading system" and "advisory service" for trading E-mini S & P 500 futures contracts (ETS).  (ECF # 1, para. 1).   The CFTC contends that Defendant misrepresented the performance of ETS, "it's ability to predict market behavior, client profits and the Live Trading Room . . ."  (ECF #1, para. 33).   Broadly, the misrepresentations breakdown into several categories, and this list is not exclusive:  did Defendant misrepresent how the system works; did Defendant misrepresent his profit(s) using the system; and was Defendant's use of hypotheticals or models, within this context, in itself a misrepresentation.  I believe that expert testimony *could* be relevant to answer some of these questions.

So, now the issue becomes whether Mr. Aronson's testimony (as to 2(b) and 3) would be relevant and if so, which part of it.  With regard to 2(b), Mr. Aronson ultimately opines that:

> The point is that it is possible to design a trade with any reward to risk ratio desired.  This is a subjective and discretionary determination made by the trader.  This neither guarantees an entry will occur or that profit will result.  It is simply a calculation to set up a strategy for a given trade.

Aronson report p. 14.

2(b) does not include an opinion that would link defining a reward risk ration to either extrapolation of future results or to making claims as to past results, either favorable or dis-favorable.  In that sense, the opinion relating to 2(b) appears to be purely academic and does

nothing to specifically aid the trier of fact as to the sections highlighted in **bold** above.  Thus, it will not be allowed for that purpose.

However, at least loosely, Defendant also ties 2(b) into his education claim:  "[m]ore to the point, Defendant did not tout his trading performance as Plaintiff insists; rather, he taught students how to define reward-to-risk ratios in advance of any trades."  (ECF # 123, p.5).  To the extent the Defense wishes to use the opinion in 2(b) to claim that Defendant created a system for trades never entered into for purely educational reasons, that will be allowed.

3.      Can a performance history be constructed for a trading methodology?

Starting with the opinion, Dr. Aronson essentially states that a performance history cannot be created when looking at a subjective trading system from a repeatability perspective. The system lacks repeatability.  Something might be gained from keeping logs and notes of past trades, "one may gain confidence in such a methodology by following it over a given period of time, but the fact remains that it is not an objectively repeatable experiment from one individual to another, or even by the same individual."  Aronson report p. 15.

To the extent that this opinion would bear on anything relevant to this action, and it does not, it would be with regard to the claim that Defendant violated the Order of July 12, 2001 prohibiting him from making misrepresentations about performance, profits, or results that can be achieved using his trading system or advisory service.  But Mr. Aronson's opinion that a performance history cannot be created under these circumstances does not "advance" the evidence from Defendant's perspective.  *See Bitler,* at 1234.  It goes the opposite way and will

do nothing other than confuse the jury and obfuscate the issue.  For that reason, the opinion set forth as an answer to question 3 will not be allowed.

Therefore, It is Ordered as follows:

1.      With regard to opinion 2(a):  Mr. Aronson will be able to opine as to whether Defendant was offering and selling an advisory service or teaching.  Mr. Aronson will not be able to proffer for himself the definition of advisory service.   Mr. Aronson will be able to give specific examples to discuss how a teacher might use "current" or "real-time examples" as a teaching method.

2.      With regard to opinion 2(b):  Mr. Aronson may opine that creating a system for trades never entered into could be of educational benefit, thus bolstering the assertion that Defendant was merely teaching.

3.      The opinions set forth in 1 and 3 will not be allowed and are excluded from evidence.

Dated at Grand Junction, Colorado, this February 7, 2017.

_____

Gordon P. Gallagher

United States Magistrate Judge