# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 15-cv-02313-REB-GPG

U.S. COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

GREGORY L. GRAMALEGUI,

    Defendant.

## RECOMMENDATION REGARDING THE CFTC'S MOTION FOR RELIEF DUE TO DEFENDANT'S SPOLIATION

    This matter comes before the Court on the CFTC's motion for relief due to Defendant's spoliation (ECF #170)[1] (which was referred to this Magistrate Judge (ECF #172)),[2] Defendant's response (ECF # 209) and the CFTC's filing in advance of the motions hearing (ECF #227, as

---

[1] "(ECF #170)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

required by the Court at ECF #221)). The Court has reviewed each of the aforementioned documents and any attachments. The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises. Oral argument was held on May 25, 2017. For the following reasons, **I respectfully recommend that the District Judge GRANT the motion as specifically set forth below.**

"Destruction of evidence, or spoliation, is a discovery offense...." *Gates Rubber Co. v. Bando Chem. Indus. Ltd.,* 167 F.R.D. 90, 101 (D. Colo. 1996). To ensure that discovery as permitted under the Federal Rules of Civil Procedure is not rendered futile, "litigants have a duty to preserve documents that may be relevant to pending or imminent litigation." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 244 F.R.D. 614, 620 (D. Colo. 2007). The Court may impose sanctions for destruction or loss of evidence. *Id.* "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because [he] knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citing *103 Investors I, L.P. v. Square D Co.,* 470 F.3d 985, 989 (10th Cir. 2006)). The movant has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it. *In re Krause*, 367 B.R. 740, 764 (D. Kan. 2007); *see also Oldenkamp v. United Am. Ins. Co.,* 619 F.3d 1243, 1251 (10th Cir. 2010). A party is under a duty to preserve evidence when litigation is imminent. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007).

A court may find that spoliation has occurred when a party either negligently or intentionally fails to produce relevant evidence in litigation. The failure may, of course, occur because evidence has been destroyed or lost. *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149

(10th Cir. 2009). When a party has a duty to preserve evidence which is lost or destroyed and the adverse party is prejudiced by its absence, sanctions are appropriate. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009).

The CFTC's motion, which claims pervasive spoliation by Defendant throughout this action, seeks default judgement. "Alternatively, the CFTC seeks: (1) an adverse inference that the lost information was unfavorable to the Defendant, and (2) a presumption that the documents produced by Defendant's service providers are authentic . . ." ECF # 170, p. 23.

The CFTC has laid out their spoliation claim(s) over a series of motions and filings. The extent of the claimed, and proven spoliation, is extensive, requiring a detailed analysis of each area. The CFTC first moved for discovery violations in a motion to compel (ECF #46) and a supplemental exhibit (ECF #64-1). The Court found that there were violations resulting in spoliation (ECF #67) and objections to that Order were overruled by the District Judge (ECF#105). In the instant motion and as elucidated in ECF #227, the CFTC seeks a presumption of authenticity as to a number of items received from non-parties (*see* chart 4(a)) and an adverse inference ruling as to a number of items (*see* chart 4(b)).

The following are all with regard to ECF #227, chart 4(a):

Withdrawn objections:

With regard to ECF #227, chart 4(a), section I, Defendant has withdrawn his objection and accedes to there being a presumption under Fed. R. Evid. 901 as to the authenticity of those documents provided by the following service providers:

1. Enhanced Solutions;

3. Ninja Traders;

5. SendGrid;

6. TradingPub;

7. Vimeo;

8. Webinato/Omnovia;

9. GoDaddy;

10. Citrix.

Defendant's objections being withdrawn, the Court Orders that there will be a presumption of authenticity under Fed. R. Evid. 901 as to each of the providers listed above with regard to those specific documents listed and outlined in ECF #227, chart 4(a), section I.

PRWeb:

Defendant objects to the presumption as to #2, G4 Design House, and #4, PRWeb. With regard to PRWeb, the parties indicate that there is some possibility of resolution. The Court is to be informed no later than June 19, 2017 if no resolution has been reached.

G4 Design House:

With regard to the G4 Design House documents, these are briefly outlined in ECF #227, chart 4(a), #2 and discussed in ECF #170, pp. 9-10. Documents were not produced from the Defense regarding G4 Design House, there was some initial mention of their existence during the spoliation deposition and the CFTC obtained the documents through production from G4 Design

House. *Id*. Defendant argues that the work being done by G4 Design House was for another entity, Ask Trader World, and that it was a project unrelated to Emini Trading School thus not requiring disclosure. ECF # 209, pp. 18-19. Evidence and argument presented at hearing of this matter further fleshed out that the discussion with G4 Design House specifically referenced and incorporated Emini Trading School and that the G4 work was not some discrete project somehow immune from discovery. The timing of the activity convinces the Court that Defendant should have been well aware of the need to preserve and produce the G4 Design House documents in discovery, which ultimately did not occur requiring the CFTC to obtain them directly from G4 Design House. I find spoliation as to the G4 Design House documents. They should have been preserved and produced. The requested relief, a presumption of authenticity under Fed. R. Evid. 901, is entirely reasonable and appropriate under the circumstances and is so Ordered.


James Petrie:

The CFTC received a number of documents and other items from James Petrie, an individual who worked for Emini Trading in a sales role, ECF #227, chart 4(a), section II. These documents were not provided to the CFTC by Defendant. As above the CFTC seeks a presumption under Rule 901. Apparently, Mr. Petrie worked for Emini during the Summer/Fall of 2014. Defense Counsel, in his presentation during oral argument, stated that Mr. Petrie worked for Emini for 2 months in a sales role. Upon leaving, Defendant supposedly locked out Mr. Petrie's email and destroyed all the documents therein.

This position does not comport with the reality of business. The Court can accept Defendant's position that it might be standard practice to lock a departing employee out of their

5

email or other electronic access, essentially the modern equivalent of taking away the keys. However, the idea that a departing employee would immediately have the fruits of their labors destroyed doesn't make much sense. The information obtained from Mr. Petrie includes 2 promotional videos, other marketing materials and most importantly information relating to tracking of clients and client leads. Chart 4(a), section II. Mr. Petrie was an employee charged with sales, whatever the reason for his departure, an employer is unlikely to destroy the contact leads generated, the only method to track customers and potential customers Mr. Petrie interacted with. A far more reasonable, a far more likely rational is spoliation to deprive the CFTC of the documents. Fortunately, Mr. Petrie did not destroy the documents and produced them to the CFTC. I find spoliation as to the Petrie documents. They should have been preserved and produced. The requested relief, a presumption under Fed. R. Evid. 901, is entirely reasonable and appropriate under the circumstances and is so Ordered.

Copies of Defendant's websites:

The CFTC has obtained copies of Defendant's websites from 2 primary sources: (1) the CFTC in-house staff member who downloaded and preserve the websites; and (2) the Wayback machine. ECF #227, chart 4(a), section III, *see also* ECF #217, this Magistrate Judge's recommendation as to the CFTC's partial motion for summary judgement for a discussion as to these sources. As above, the CFTC asks for a presumption pursuant to Rule 901. Alternatively, as to the Internet Archive/Wayback, the CFTC requests that Defendant pay for future records should the Court not Order the presumption.

The CFTC preserved copies of Defendant's ETS website on 10/7/2014. I have previously found the preservation date in this action to be October 15, 2014. ECF #67, p. 8. The issue with regard to preservation of the websites has been disputed over numerous motions and addressed by the Court in prior rulings and recommendations accordingly. *See* ECF #67 and 217. The short answer is that Defendant should have preserved the websites, period. Defendant did not do so. Applying the test set forth above, there is spoliation as to the websites. Defendant had a duty to preserve the documents, did not do so, and they "may" be relevant to pending or imminent litigation. *See Cache La Poudre Feeds*, 244 F.R.D. at 620. Fortunately, the CFTC had foresight enough to preserve the materials itself a week prior to the preservation date. As to the week between the preservation by the CFTC and the preservation date, no one has suggested that there was any change in the websites during that time period which would alter their evidentiary value.

Aside from disputing spoliation, Defendant interposes a number of arguments against the requested relief. Defendant argues, as he did during the summary judgment phase, that the production is incomplete in that it does not provide the click through log in page for the trading room. First, if there is any fault for this it lies with Defendant. Had Defendant wanted to present a full picture of the entirety of his website, he should have preserved it. Second, as I discussed in the recommendation regarding the motion for summary judgment, this is essentially a red herring in that a potential customer's decision to go deeper into the website does not vitiate the fact that they got on to it to begin with. *See* ECF #217, p. 13. Of course, should Defendant happen to find or have the click through pages available, to the extent allowed by the District Judge at trial, he can present that information with it going to the weight to be given by the Court to the evidence.

Defendant also disputes many of the websites on the basis that they were in some fashion tests or attempts at building some other business and "never went anywhere" or "were speculative projects having nothing to do with ETS [Emini Trading]." Defendant's presentation from the joint discovery hearing on May 25, 2017. I give little credence to this argument and point out the "may" language quoted from *Cache La Poudre* above. While parties bear some responsibility for parsing through and determining that potential information is not relevant or discoverable under the Federal Rules, this clearly was. Much of this action dwells on the website advertisement by Defendant. The idea that there were some, arguably loosely related, websites that were test sites, made no money and were being shut down anyway and that thus they were not discoverable is frankly incredible to this Magistrate Judge. They were and are discoverable, they should have been preserved and failure to do so was spoliation. Any arguments as to the weight can be made during trial. I find that the websites preserved by the CFTC on October 7, 2014 are entitled to be presumed authentic under Fed. R. Evid. 901.

Without belaboring the issue, I make the same finding as to the websites produced through the Internet Archive. I have previously discussed the operation of the Wayback Machine. *See* ECF# 271, p. 13. I find spoliation as to these documents and I find that the CFTC is entitled to a presumption of authenticity under Fed. R. Evid. 901. I find no need to address the CFTC's alternate request for financial relief as to future authentication costs for these same records as the presumption is Ordered.

Adverse inferences:

In addition to the presumption set forth above, the CFTC requests a variety of adverse inferences. *See* ECF #227, part 4(b). "If the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith." *Id.* "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a bad case." *Aramburu v. The Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir. 1997). "Judges must be careful to tailor the remedy to the problem, and 'take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms.' The sanction to be applied needs to be one which is appropriate to the truth-finding process, not one that serves only further to suppress evidence . . . Sanctions which preclude the admission of certain evidence or provide for a negative inference in the place of destroyed evidence operate in the same fashion as a default judgment. They intrude into the 'truth-finding process' of a trial, and represent 'grave steps' for a trial judge to take. Such sanctions should be considered with very great restraint." *Gates Rubber Co. v. Bando Chemical Industries, Ltd.,* 167 F.R.D. 90, 106-07 (D. Colo. 1996) (citations omitted).

I will start with a discussion of Defendant's mental state or capacity. Defendant has argued throughout, including during the discovery hearing on May 25, 2017, that any failings to produce discovery were alternatively due to Defendants mental state or the over aggression of the CFTC in seeking discovery. The filings are replete with references to Defendant's lack of intent and argue that "Defendant may be disorganized and forgetful, but he was not intentionally trying to deprive Plaintiff of any emails." ECF # 188, p. 3. *See Malautea v. Suzuki Motor Co., Ltd.*, 897 F.2d 1536, 1543 (A defendant must do more than merely assert some inability to comply with discovery and must introduce evidence in support of that claim). With regard to Defendant's ability to express himself, it is argued that "Defendant has extreme difficulty in

expressing himself, especially in response to the aggressive, antagonistic deposition questioning . . ." ECF # 120, p. 2. Defense Counsel later labels the questioning a "deposition inquisition." *Id*. at 7. A review of the transcripts fails to show any similarity in questioning style between Counsel for the CFTC and Torquemada.

Much as in a criminal case with a *mens rea* of intent, what is going on in someone else's head can be hard to prove. Presumably, most individuals acting in bad faith and with intent are unlikely to fess up and admit to such actions. Absent an admission or the proverbial smoking gun, the most reasonable way to find bad faith is by observing the course of discovery conduct over a number of months as I have done so in this action.

In this action, it is the determination of this Magistrate Judge that Defendant has manipulated and obfuscated the discovery process to suit his ends, essentially from start to finish.

Each time Defendant has failed or refused to provide some piece of discovery, he has hidden behind his excuse of the moment. Defendant blamed his need to assert the privilege on the CFTC stating "[t]he CFTC caused the situation of which it now complains" by delivering a privilege log which "referenced communications by the CFTC with the U.S. Attorneys in Chicago and Denver concerning this matter. ECF #190, p. 2. Defendant blamed his loss of emails on a policy of regular purging (that serendipitously resulted in a purge shortly after the CFTC revealed an ongoing investigation). Defendant blamed his inability to recall email addresses, websites and other data on his lack of memory or organization. Defendant blamed the CFTC for costing him money as a result of this litigation, thus forcing him to not pay bills to certain hosts and thus resulting in the loss of substantial advertising information and the like. Defendant blamed the Court for failing to be specific enough in this Magistrate Judge's Order

regarding prior discovery violations, thus resulting in a lack of understanding by Defendant as to whether certain financial information was discoverable.

I do not find Defendant's claims of inability to understand and comply to be credible. I have reviewed hundreds, if not thousands, of pages of discovery over the course of this case and through numerous discovery disputes. The compendium shows Defendant as a sophisticated and shrewd operator who presents himself to the world as knowledgeable and able within the complex field of Emini trading. Defendant's knowledge and use of complex and varied computer, internet and other advertising sources displays someone with a deep knowledge of technical operations and the ability to organize multiple advertising campaigns. Arguments that he is using some of these platforms for "test" purposes do nothing to diminish this idea. To turn around, with absolutely no evidence, and claim Defendant is basically disorganized and is unable to remember what he is doing from day to day, cannot recall where or how he advertised and which sites he used is incredible. Even if true, a mere perusal of a check register or credit card statement would help to remind any business person of how or where they spent their money, thus triggering the need to disclose.

To be clear, I find a pervasive, continuous and intentional pattern of discovery violations in this action that can equate to nothing other than an intentional plan to deprive the CFTC of discovery with which it should have been otherwise provided. There was bad faith. The CFTC has requested a default judgment, which I do not recommend for the following reasons. Dismissal of an action, default judgment, may be an appropriate remedy for some discovery violations. *See Garcia v. Berkshire Life Ins. Co. of America*, 569 F.3d 1174 (10th Cir. 2009) (Defendant manufactured evidence over the course of time), *see also Phillips Electronics North America Corporation v. BC Technical*, 773 F.Supp. 2d 1149 (D. Utah 2011) (for a more general

discussion of the topic). In examining whether default judgment was appropriate, the District Court below in *Garcia* made a finding that the prejudice from the discovery violations was "overwhelming," that there was "absolutely no confidence that [Ms. Garcia] would not attempt to offer false evidence at a trial," and that defendant in that action had "interfered egregiously with the court's administration of justice." *Garcia* at 1179. Reading between the lines, it appears that the Defendant Garcia made it essentially impossible to proceed with the trial in that action thus making default judgment the only appropriate remedy despite the lack of Garcia being provided with an *Erenhaus* warning of potential dismissal.[3]

While the discovery violations in this action perhaps get close to that standard, there are some differences. The prejudice here, in large part due to other actions by the CFTC to preserve and find discovery, cannot be categorized as overwhelming. The CFTC can proceed with a case. Defendant will not be testifying, at least as to those areas for which he has asserted his Fifth Amendment Right, other than to reassert that right. And further sanctions will be imposed. The practical loss to the CFTC is in terms of volume. There is no doubt that Defendant has disseminated advertising violating the rules. *See* ECF #217. The Court has previously reviewed and discussed many of examples of this conduct. *Id.* The problem the CFTC faces is how many times did this occur and how many people received this advertising. While Defense Counsel may characterize this as "piling on," the CFTC is entitled to try and prove as many violations as it believes exist and the Court can later fashion a sanction as appropriate for those violations which are proven.

---

[3] Pursuant to *Erenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), Defendant Gramalegui is hereby warned that further discovery violations may indeed lead to additional sanctions up to and including potential default judgment.

One recent example of potential negative effect is with regard to the email/advertising list. Defendant had supposedly collected an email list of some 10,000 to 65,000 names/contacts to whom he could disseminate information. At some point, this list was provided to SendGrid so advertising could be sent. This list was never provided. To the extent it still exists, I Order the advertising list to immediately be disclosed to the CFTC. During the discovery hearing on May 25, 2017, Defendant interposed, for the first time, an argument that Defendant personally, and not as Emini Trading, had rented the list to SendGrid for Emini advertising, thus somehow shielding it from disclosure. This argument is entirely specious.

The course of conduct over the breadth of this action shows spoliation, intent and bad faith. Absent default judgment, which I do not recommend, I find that a remedy including adverse inferences to be entirely appropriate. The CFTC has set forth, in great detail, the minimum adverse inferences which it seeks as a result of Defendant's bad faith spoliation. These are listed at ECF #227, 4(b), pp. 1-5. I find each and everyone one of these inferences appropriate, reasonable and logically related to the bad faith discovery violations and spoliation. With regard to the financial requests in 4 (a) and (b), it appears that Defendant has still not fully complied with production of required financial documents as previously Ordered.[4] It is Ordered that the CFTC shall receive adverse inferences as set forth above.

I respectfully recommend that the Honorable Senior Judge Blakburn Order as follows:

---

[4] I make no finding as to the appropriate disgorgement period. *See Kokesh v. Securities and Exchange Commission,* No. 16-529, 580 U.S. ____ (2017); *see also* ECF #234, finding the need to delve into this premature.

It is Ordered that: There will be a presumption of authenticity under Fed. R. Evid. 901 as to each of the providers listed in ECF #227, chart 4(a), section I #s 1,3, and 5-10

It is further Ordered that: The Court is to be informed no later than June 19, 2017 if no resolution has been reached as to a presumption regarding PRWeb.

It is further Ordered that: There will be a presumption of authenticity under Fed. R. Evid. 901 as to G4 Design House, ECF # 227, chart a, #2.

It is further Ordered that: There will be a presumption of authenticity under Fed. R. Evid. 901 as to the Petrie documents, ECF # 227, chart a, section II.

It is further Ordered that: There will be a presumption of authenticity under Fed. R. Evid. 901 as to the websites preserved by the CFTC on October 7, 2014.

It is further Ordered that: There will be a presumption of authenticity under Fed. R. Evid. 901 as to the websites produced through the Internet Archive/Wayback Machine.

It is further Ordered that: The advertising list is to immediately be disclosed to the CFTC.

It is further Ordered that: The CFTC shall receive each of the adverse inferences as set forth in ECF #227, 4(b).

Finally, Plaintiff shall be awarded reasonable costs and attorneys' fees incurred in making the Motion. *See FatPipe Networks India, Ltd. V. Xroads Networks, Inc.,* No. 2:09-cv-186 TC DN, 2012 WL 192792, at *6 (D. Utah Jan. 23, 2012); *Asher Assocs., LLC v. Baker Hughes Oilfield Operations, Inc.,* No. 07-cv-01379-WYD-CBS, 2009 WL 1328483, at *12 (D. Colo.

May 12, 2009). The CFTC has filed a calculation of those costs at ECF #231. This filing is being considered a recommendation by this Magistrate Judge with the corresponding objection time period. Thus, Defendant shall have fourteen (14) days to respond to ECF #231 from the issuance of an order adopting or overturning this recommendation.

Dated at Grand Junction, Colorado, this June 14, 2017.

_____

Gordon P. Gallagher

United States Magistrate Judge